UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------X
                              :
UNITED STATES OF AMERICA      :
                              :
v.                            :   Crim. No. 3:12CR17(AWT)
                              :
DAVID CARI                    :
                              :
------------------------------X

**ORDER PRECLUDING PROFFERED EXPERT OPINIONS OF DR. BERGER**

A <u>Daubert</u> hearing was held with respect to the government's motion to preclude the expert testimony of Doctor Linda Berger. After consideration of Dr. Berger's report, her testimony and the exhibits introduced at the <u>Daubert</u> hearing, and the post-hearing submissions of the parties, the court is precluding the expert testimony of Dr. Berger.

As set forth in Dr. Berger's report, she is prepared to offer the following six expert opinions:

1. Based upon the foregoing disclosures and reasons, it is my opinion to a reasonable degree of professional certainty that beginning in May 2006, as a result of David Cari's being shot in the line of duty as an East Haven police officer, he began to suffer from PTSD in the extreme range.
2. Based upon the foregoing disclosures and reasons, it is my opinion to a reasonable degree of professional certainty and it is generally accepted and recognized within my field that the symptoms of PTSD include "hyperarousal" which includes, but is not limited to, hypervigilance and an exaggerated startle response.
3. Based upon the foregoing disclosures and reasons, it is my opinion to a reasonable degree of professional certainty and it is generally accepted and

1

recognized within my field that someone suffering
   from PTSD may not accurately recall the order of
   events as they actually occurred.
4. Based upon the foregoing disclosures and reasons, it
   is my opinion to a reasonable degree of professional
   certainty and it is generally accepted and
   recognized within my field that someone suffering
   from PTSD may not accurately recall the events as
   they occurred.
5. Based upon the foregoing disclosures and reasons, it
   is my opinion to a reasonable degree of professional
   certainty that in July 2008, David Cari was
   suffering from PTSD in the extreme range.
6. Based upon the foregoing disclosures and reasons, it
   is my opinion to a reasonable degree of professional
   certainty that in February 2012, David Cari was
   suffering from PTSD in the extreme range.

Def. Exhibit E at 4-5. The portion of Dr. Berger's report that discusses the "Clinician Administered Posttraumatic Stress Scale" reads as follows:

> The Clinician Administered Posttraumatic Stress Scale (CAPS) is a structured interview designed to assess for PTSD. It has been in use for over 20 years and is considered the gold standard in PTSD assessment by Department of Veteran's Affairs. It corresponds to the Diagnostic and Statistical Manual of Mental Disorders, 4th edition (DSM-IV) criteria for PTSD in that it assesses for all 17 symptoms of PTSD. According to the DSM-IV there are three groups of symptoms that can present themselves after a person is exposed to a traumatic event in which they felt threatened with serious injury or death and their response involved intense fear, helplessness, or horror. Those three groups of symptoms include re-experiencing symptoms, avoidance and numbing, and hyperarousal. The three groups of 17 symptoms are broken down as follows:
>     A. Re-experiencing symptoms
>         1.   Intrusive recollections
>         2.   Distressing dreams
>         3.   Acting or feeling as if the event were recurring

>    4. Psychological distress at exposure to cues
>    5. Physiological reactivity on exposure to cues
> 
> B. Avoidance and Numbing
>    6. Avoidance of thoughts or feelings
>    7. Avoidance of activities, places, or people
>    8. Inability to recall important aspect of trauma
>    9. Diminished interest in activities
>    10. Detachment or estrangement
>    11. Restricted range of affect
>    12. Sense of a foreshortened future
> 
> C. Hyperarousal
>    13. Difficulty falling or staying asleep
>    14. Irritability or outbursts of anger
>    15. Difficulty concentrating
>    16. Hypervigilance
>    17. Exaggerated startle response

Def. Exhibit E at 3.

Pursuant to Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The "proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied . . . ." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).

> As the Supreme Court explained in Daubert [v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993)], Rule 702 requires the district court to ensure that any and all

> scientific testimony or evidence admitted is not only relevant, but reliable. As to reliability, <u>Daubert</u> enumerated a list of factors that, while not constituting a 'definitive checklist or test,' a district court might consider: whether a theory or technique has been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation. When an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony.

<u>Ruggiero v. Warner-Lambert Co.</u>, 424 F.3d 249, 253 (2d Cir. 2005) (internal quotation marks and citations omitted).

**<u>Opinion 2</u>**

The Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (1994) (DSM-IV) sets forth the diagnostic features of posttraumatic stress disorder (PTSD). It provides that the symptoms include hyper-vigilance (criterion D4) and exaggerated startle response (criterion D5). Opinion 2 accurately states that "the symptoms of PTSD include 'hyperarousal' which includes, but is not limited to, hypervigilance and exaggerated startle response." However, the defendant has not shown how Opinion 2 could help the jury decide whether he falsely arrested Manship or authored a false police report. Opinion 2 does not directly address defendant Cari's conduct with respect to either of those charges. Nor does it address his conduct with respect to those charges indirectly, i.e. by serving as the foundation

4

for another opinion which does address those charges. In his post-Daubert hearing memorandum, defendant Cari includes an explanation why certain proffered opinions are relevant but he does not give an explanation for why this opinion is relevant. This is a major failing because "[t]o determine whether evidence is helpful, the court looks to the 'proffered connection between the . . . research or test result to be presented and particular disputed factual issues in the case.'" 4 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE §702.03 at 37 (2d ed. 2013).

Based on the current record, the only scenario under which Opinion 2 could become relevant would be as a foundation for an opinion that defendant Cari experienced hypervigilance and exaggerated startle response during the incident on February 19, 2009. However, there are two reasons why this scenario will not present itself. First, the defendant has represented that such an opinion is not being proffered. Second, even if Dr. Berger were to attempt to express such an opinion, she testified that her opinion that the defendant disassociated was based on (i) her history of therapy sessions with him, (ii) what she claims she observed in a videotape of the incident, and (iii) the defendant's statement to her that "his head went someplace else," but that his statement to her merely confirmed what she saw in the videotape. However, there is no evidence that the

5

portion of the videotape she claims she relied on exists, while all the evidence is to the contrary.

Thus Opinion 2 would not help the jury in this case understand the evidence or determine a fact in issue.

**Opinions 3 and 4**

Defendant Cari has failed to show that Opinions 3 and 4 are the product of reliable principles. Although Dr. Berger proposes to testify that it is generally accepted and recognized within her field that someone suffering from PTSD may not accurately recall the order of events as they actually occurred and may not accurately recall the events as they actually occurred, the evidence at the Daubert hearing does not demonstrate such is the case. Neither difficulty accurately recalling the order of events as they actually occurred nor difficulty recalling events as they actually occurred is among the seventeen symptoms of PTSD recognized in the DSM-IV.

Dr. Berger testified, however, that even though these two symptoms are not among the seventeen recognized symptoms in the DSM-IV she has observed such symptoms in her patients, and in addition, the two symptoms have been recognized as symptoms of PTSD in studies that have been written about in papers written by researchers in her field.

Dr. Berger's testimony as to what she has observed with respect to her patients is not sufficient to establish that the

6

testimony is the product of reliable principles. She has not conducted any studies or published any papers and the assertions made in her testimony are not capable of being subjected to peer review.

With respect to papers about studies that have been conducted, Dr. Berger produced three papers at the hearing. The first paper was published in 2007 and dealt specifically with memory for emotionally neutral information and PTSD. See Chris Brewin et al., Memory for Emotionally Neutral Information in Posttraumatic Stress Disorder: A Meta-Analytic Investigation, 116 J. ABNORMAL PSYCHOL. 448 (2007). However, that paper stated in the abstract that "[s]tudies have come to conflicting conclusions about whether posttraumatic stress disorder (PTSD) is associated with poorer memory for emotionally neutral information." Id. at 448. The authors also state at the beginning of the article that

> [t]he question of whether posttraumatic stress disorder (PTSD) is associated with memory performance beyond specific dysfunction in the processing of trauma memories is a controversial one. PTSD symptom criteria include the presence both of intrusions of trauma memories and difficulties in recalling aspects of the trauma but are less precise concerning the effect on everyday memory for emotionally neutral material, requiring simply that the individual report concentration difficulties.

Id. Like another paper on which Dr. Berger relies, this paper was a meta-analysis, in this case of 27 studies.

7

Dr. Berger also submitted at the hearing a November 2008 paper. See Grethe E. Johnsen & Arve E. Asbjornsen, Consistent Impaired Verbal Memory in PTSD: A Meta-Analysis, 111 J. AFFECTIVE DISORDERS 74 (2008). This was a meta-analysis of 28 studies. The authors of this paper observed that:

> Problems with concentration and memory in everyday situations are often reported by PTSD patients in clinical settings. Difficulties with concentration, intrusive recollections of the traumatic events, and yet inability to recall important aspects of the trauma are all different types of memory disturbances integrated in the diagnostic criteria for PTSD. The symptoms connected to problems with everyday memory are however not included as a criteria.

Id. at 2 of 10 in copy supplied by Dr. Berger. After recognizing that the symptoms connected to problems with everyday memory are not included as a criteria, however, this paper does not recommend that such problems be added as a criteria. Rather the authors state "[b]ased on the results, it is not possible to establish the causal relationship of verbal memory impairment and PTSD." Id. at 7 of 10. The authors concluded that further studies in the field are needed.

The third paper submitted by Dr. Berger was published in 2010. See Slawomira J. Diener et al., Learning and Consolidation of Verbal Declarative Memory in Patients with Posttraumatic Stress Disorder, 218 J. PSYCHOL. 135 (2010). The authors of that study concluded that "extending previous results, we showed that learning rather than memory

consolidation is impaired in PTSD patients, a differentiation that has not been made previously." Id. at 139. This study included 14 PTSD patients, 14 traumatized subjects without PTSD, and 13 non-traumatized healthy controls. In describing the limitations of their study, the authors made two observations. First, they observed that the sample size for the present study was "rather small," and second, they observed that "depression scores were quite high in our sample and the effect of depression rather than PTSD symptoms on verbal memory cannot be ruled out (see also Johnsen et al., 2008)."

Moreover, there is no evidence that anyone has even proposed adding poorer memory for emotionally neutral information to the list of PTSD symptoms in the DSM-IV. Based on the foregoing, the court concludes that it has not been demonstrated that it is generally accepted and recognized in Dr. Berger's field that difficulty accurately recalling the order of events as they actually occurred and difficulty recalling events as they actually occurred are symptoms of PTSD.

Thus, the court concludes that neither Dr. Berger's observations based on her work with patients nor the articles on which she relies establish a reliable principle on which Opinions 3 and 4 are based. Moreover, even if the court were to conclude that Opinions 3 and 4 were based on or were the product of reliable principles, defendant Cari has not shown that Dr.

9

Berger reasonably applied the principles to the facts of this case. Over the course of all of his sessions with Dr. Berger, defendant Cari never once complained about memory problems concerning events other than the 2006 shooting, i.e. the trauma. Even with respect to the 2006 shooting, defendant Cari complained only about not being able to remember all the details and he only made that complaint in 2006. In 2008, Cari had no trouble remembering all the details of the 2006 shooting and the record shows that he had a perfect score in this area on the 2008 CAPS test administered by Dr. Berger. See Gov't Exhibit 3 at 102, 112, 122. Dr. Berger never administered any memory test to Cari even though such tests do exist, and at no time did Dr. Berger ever observe or conclude that the defendant had any memory problems concerning events other than the trauma.

Thus, Dr. Berger's opinions are that someone suffering from PTSD may not accurately recall the order of events as they actually occurred or the events as they actually occurred. She is not prepared to give an opinion, and she has not proffered an opinion, that defendant Cari is included in the group of people who may not accurately recall the order of events as they actually occurred or recall the events as they actually occurred. In addition, Dr. Berger admitted that one may have memory problems that are not linked to PTSD. Consequently, defendant Cari has not established that Opinions 3 and 4 will

help the jury in this case understand the evidence or determine a fact in issue.

Defendant Cari argues that Dr. Berger's opinion that "an individual suffering from PTSD may inaccurately recall an event or the order of disputed events goes directly to the issue of intent. The weight, if any, of the proffered expert testimony should be decided by the jury." Def. Post-Daubert Hr'g Mem. (Doc. No. 324) at 6. However, that is not the case where there is a failure to establish that the expert opinion satisfies the requirements of Rule 702.

**Opinions 1, 5 and 6**

Defendant Cari has failed to show that Opinions 1, 5 and 6 will either help the jury understand the evidence or determine a fact in issue. While these opinions could establish that Cari suffered from PTSD in May 2006, in July 2008 and in February 2012, the incident with respect to which these opinions are offered occurred during the months of February and March 2009, and Dr. Berger offers no opinion with respect to that time frame. Thus the jury would be left to speculate, on a question where an expert opinion would be helpful, as to whether defendant Cari suffered from PTSD at the relevant point in time.

Moreover, standing alone, even an opinion that Cari suffered from PTSD during the months of February and March 2009, does not help the jury understand the evidence or determine a

fact in issue.  It would do so only if it served as a foundation for an opinion that established some connection between conduct that forms the basis for an offense with which he is charged and the opinion that he suffered from PTSD during the relevant time period, and no such opinion is being proffered by Dr. Berger.

It is so ordered.

Dated at Hartford, Connecticut on this 20th day of September, 2013.

```
            _____/s/_____
                   Alvin W. Thompson
                United States District Judge
```