UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 3:12CR17 (AWT) |
| | : | |
| v. | : | |
| | : | NOVEMBER 26, 2013 |
| DAVID CARI and DENNIS SPAULDING | : | |

### GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANTS' MOTIONS FOR A JUDGMENT OF ACQUITTAL AND A NEW TRIAL

Defendants David Cari (hereinafter "Cari") and Dennis Spaulding (hereinafter "Spaulding") move for a judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P. and a new trial pursuant to Rule 33, Fed. R. Crim. P. The Government submits this omnibus memorandum in response to all of these motions. For the reasons set forth below, defendant Cari's and Spaulding's motions for post-trial relief should be summarily denied.

Significantly, in their motions for an acquittal, both defendants fail to even discuss the incriminating evidence, let alone view the evidence, in the light most favorable to the Government. Moreover, both defendants fail to allege even a single purported error in the trial record that would warrant a new trial. Rather, both defendants have chosen to rehash the same unsuccessful defense theories that they advanced during trial in the hope that the Court will override the jury's verdict or empanel a new jury to give the defendants a second bite at the apple. In short, because there was more than sufficient evidence for the jury to convict defendants of the charged civil rights violations, and because defendants were both given an eminently fair trial, the Court should deny the motions for acquittal and a new trial.

Because this Court is familiar with the entire record including all of the relevant facts of this case, the Government will not reiterate in this opposition memorandum each and every

1

relevant fact that supports the jury's guilty verdicts. Nevertheless, it should be clear that the Government relies on the entire record of the case, including the entire trial record, in support of its argument that the convictions of each of these defendants should not be disturbed.

## A.     Rule 29: Legal Discussion

When attacking a jury's verdict on the grounds of insufficient evidence, a defendant bears a "very heavy burden." *United States v. Marji*, 158 F.3d 60, 63 (2d Cir. 1998); *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994). Therefore, when deciding a Rule 29 motion for acquittal, this Court must view all evidence in the light most favorable to the Government and credit every inference that the jury may have drawn in favor of the Government. *United States v. Wilkerson*, 361 F.3d 717, 724 (2d Cir. 2004); *United States v. Downing*, 297 F.3d 52, 56 (2d Cir. 2002).

The evidence, moreover, must be viewed in conjunction, not in isolation; and its weight and the credibility of the witnesses is a matter for argument to the jury, not a ground for legal reversal. *See Downing*, 297 F.3d at 56; *United States v. Best*, 219 F.3d 192, 200 (2d Cir. 2000). In this regard, the Court may not assess witness credibility, resolve inconsistent testimony against the verdict or otherwise weigh the significance of the evidence. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). The jury is "exclusively responsible" for determinations of witness credibility. *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993). In assessing the weight of the evidence, the jury is free to credit all or part of the testimony of a given witness. Moreover, the task of choosing among competing, permissible inferences is for the fact-finder, not the reviewing court. *Best*, 219 F.3d at 200. Significantly, the Government need not disprove every reasonable hypothesis consistent with the defendant's innocence. *Strauss*, 999 F.2d at 696. Rather, a jury's decision to convict may be

2

based solely on circumstantial evidence and any reasonable inferences based upon the evidence. *Id*. In this vein, the Supreme Court has observed that

> [c]ircumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Holland v. United States*, 348 U.S. 121, 140 (1954).

The Second Circuit has made clear that the strict Rule 29 standard is "necessary to avoid judicial usurpation of the jury function." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984). Rule 29 thus must not be used as a vehicle for the trial court to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn by the jury from the evidence. *United States v. Guadanga*, 183 F.3d 122, 129 (2d Cir. 1999); *Mariani*, 725 F.2d at 865.

As explained in *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006):

> In considering such a challenge, we must credit every inference that could have been drawn in the government's favor, and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt[.] We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence. Pieces of evidence must be viewed not in isolation but in conjunction, and the conviction must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]

*Id.* at 94-95 (internal citations and quotation marks omitted). Thus, a reviewing court must apply this sufficiency of the evidence test "to the totality of the government's case and not to each element, as each fact may gain color from others." *United States v. Guadagna*, 183 F.3d

122, 130 (2d Cir. 1999).

As our Court of Appeals has explained, "[t]he ultimate question is not whether *we believe* the evidence adduced at trial established defendant's guilt beyond a reasonable doubt, but whether *any rational trier of fact could so find*." *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998); *see also United States v. Bell*, 584 F.3d 478,481 (2d Cir. 2009) quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this regard, "the court must be careful to avoid usurping the role of the jury." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (quoting *Guadagna*, 183 F.3d at 129). Caution is especially warranted because "jurors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences." In short, this Court may not disturb a conviction on grounds of legal insufficiency absent a showing that "no rational trier of fact could have found each essential element of the crime beyond a reasonable doubt." *United States v. Walsh*, 194 F.3d 37, 51 (2d Cir. 1999).

**B.** **The Evidence Supports the Jury's Verdicts**

In summary, the evidence adduced at trial demonstrated that Spaulding and another officer, Jason Zullo (hereafter "Zullo"), harassed Latinos, Latino owned businesses, and deprived certain Latinos of rights secured to them by the Constitution. The racially biased chats between Spaulding and Zullo, along with their excessive force upon certain Latinos, further supported that they were induced to act based on their anti-immigrant views. Finally, the evidence also demonstrated that Cari falsely arrested Fr. James Manship who was advocating on behalf of the Latino community and who began to actively observe and gather evidence against members of the East Haven police department. Cari's actions were intended to protect his fellow law enforcement officers by using his authority to intimidate Fr. Manship

by arresting him for the mere act of video-taping the police. Indeed, Cari's knowingly false police report was intended to discredit Fr. Manship by depicting him as a weapon toting, obstructionist priest who resisted arrest by purportedly fighting with a police officer. The jury was certainly entitled to conclude that Cari's goal was to further the conspiracy by preventing Fr. Manship from being an effective advocate for the victims who were targeted by the East Haven police.

1. **Cari's Rule 29 Motion is Baseless**

In this case, there is no concern that Cari is an innocent person who was wrongly convicted. On the contrary, the evidence demonstrates conclusively that the jury's verdict was correct. Cari is on tape calling Fr. Manship's camera a "camera," and his deliberate and calculated effort to write a false report claiming that he did not know the camera was a camera removes any suggestion that he is an innocent man wrongly convicted. Hence, when the evidence is viewed in the light most favorable to the Government, there is no basis for a judgment of acquittal.

While Cari professes to recognize that the standard for a Rule 29 motion is to view the evidence in the light most favorable to the Government and to consider the totality of the Government's evidence, he does not view the evidence in that light in his post-trial motions. Rather, he repeatedly ignores powerful evidence – e.g., his own words written in his police report -- in the hope that this evidence, and the prior twenty-six drafts of the police report, will somehow disappear. Not surprisingly, this was the same strategy that Cari used during trial. Surely by now Cari must realize that just because he chooses to ignore inconvenient facts, a jury is entitled to use those same facts as a basis to convict him. Indeed, the Fr. Manship

police report here not only contained numerous false statements but was evidence that Cari sought to cover-up his false arrest of this religious leader.

As he did at trial, Cari fixates on irrelevant issues in an effort to distract attention from his own conduct. For example, Cari focuses once again on **a pre-trial statement** made during a press conference announcing the original Indictment **which occurred more than 18 months prior to the trial** where an FBI representative described the indicted officers as "Bullies with Badges." Of course, the trial jury never heard this statement, nor any similar statement. Now that the jury has found that Cari and other officers conspired to violate the civil rights of East Haven residents and their advocates, and did so by beating members of the Latino community, the FBI's description was completely accurate. In any event, given that the jury never heard this statement, there is nothing about this statement that demonstrates that the jury was wrong when it determined that Cari was guilty of conspiracy, false arrest and obstruction via the creation of a false police report.

Once again, Cari ignores the various drafts of his own arrest report regarding Fr. Manhsip. The fact that Cari repeatedly authored numerous false reports about that arrest **after** knowing that Fr. Manship was working with others, including Yale law school, to prove that Cari's police force was engaging in various civil rights violations was powerful evidence to prove Cari's motive to support the goals of the conspiracy. The jury was certainly entitled to conclude that when Cari authored many versions of a sham police report, Cari did so to discredit Fr. Manship and to undermine a potential federal civil rights investigation of Cari and other officers. In the light most favorable to the Government, the jury's guilty verdict on the three counts against Cari is entirely rationale. Given the obvious falsity of the police report when compared to the video, the jury had every right to think that Cari's false report

was his way of joining and furthering the conspiracy to violate the civil rights of Fr. Manship and the people he was trying to protect.

Indeed, one of the most devastating pieces of evidence is the draft of the police report in which Cari admits that he knew that Spaulding had told Fr. Manship that he had a right to video-tape the police. *See* Government Ex. 1201h. As the Court now knows, Cari deleted this exculpatory information from the final version of the police report. A rationale jury was certainly entitled to conclude that Cari's decision to remove the fact that Spaulding had told Fr. Manship that it was legal to video-tape the police was a conspiratorial act to undermine Fr. Manship, the sole advocate for the Latino community to demonstrate police misconduct by Cari's police department. Other evidence of the conspiracy includes the fact that Cari and Spaulding met at Goody's immediately after Father Manship's arrest (*see* Dispatch Tape of February 19, 2009) and that during this time, Spaulding prepared and filed a false police report of Fr. Manship's prior video-taping activity to bolster the supposed basis of the February 19, 2009 arrest. *See* discussion *infra* at page 12.

The fact that Cari persists in his alternative theories to justify Fr. Manship's arrest, including his theory that Fr. Manship was somehow "stalking" the police, does not make his claims worthy. Indeed, Cari's experienced counsel offered the "stalking theory," along with other theories, to the jury even though Cari, an experienced and trained police officer, did not arrest Fr. Manship for stalking. That the jury rejected this theory does not mean that the jury's verdict was irrational. It simply means that the jury was not buying what Cari and his counsel were selling. Cari fails to reconcile that his various defenses could be viewed by a jury as inconsistent with each other. For example, in his motion for a judgment of acquittal, Cari describes his trial defense by claiming that Fr. Manship was arrested "for one reason and one

reason only." Nevertheless, at trial, Cari offered several alternative crimes that Fr. Manship could have been arrested for rather than relying on the theories advanced in Cari's own police report, a report written by a trained police officer. The simple truth is that the jury concluded that the evidence at trial demonstrated that none of the proposed theories was correct. In short, the jury was entitled to conclude that Cari's offer of alternative theories to support Fr. Manship's arrest was nothing more than a desperate and after- the-fact attempt to excuse his unlawful conduct.

Furthermore, Cari continues to claim that Fr. Manship interfered with the seizure of evidence when the camera passed from Fr. Manship's hand to Elio Cruz's hand. In the light most favorable to the Government, the jury was certainly entitled to conclude that Fr. Manship was **already under arrest** before the camera passed from his right hand to Elio Cruz. Thus, a jury was free to conclude that the camera being passed **after the arrest** was not a proper basis to arrest Fr. Manhsip. Given the facts that Cari's police report makes scant mention of the camera **being passed** to Cruz, Cruz was not arrested for interference and the report does not list Cruz as a witness, the jury was certainly entitled to reject this belated and alternative theory of probable cause.

These conflicting defenses may explain why the jury rejected the alternative theories that Cari tried to sell to the jury during his case and in the closing argument. While Cari continues to claim that the Government failed to prove the elements of the crimes charged, the jury heard all of these arguments when Cari's experienced counsel gave his closing argument. Indeed, the evidence offered at trial, in the light most favorable to the Government, demonstrates that each of the elements of the crimes charged was proven beyond a reasonable doubt. For example, the jury was entitled to find that a conspiracy existed and that Cari joined

the conspiracy when he arrested and sought to discredit Fr. Manship, the leading advocate for the Latino community.

With respect to the elements of the obstruction crime, Cari once again tries to add an element to section 1519 when he claims that the Government failed to prove the "materiality" of any statement in the police report. As discussed at trial, there is no such requirement. In short, Cari has attempted to make a Rule 29 motion in the same hyperbolic fashion that he used at trial. As the Court will remember, Cari's counsel explained to the jury in his opening statement that Cari's police report of the Manship arrest contained mistakes. In closing, Cari's counsel tried a different theory when he suggested that the same police report was the most accurate and contemporaneous report in the case. Furthermore, Cari's counsel claimed in the opening that if there was probable cause to arrest Fr. Manship, the police report **could not** be false. That is simply not the case as each count is separate and the jury could certainly find probable cause to arrest and still conclude that the report was false. In any event, the jury rejected this schizophrenic, albeit hyperbolic, approach.

In the current Rule 29 motion, Cari uses this same hyperbole to claim that the Government "failed to satisfy virtually every element of each offense beyond a reasonable doubt." When the jury convicted Cari on each of the three counts, the jury rejected this type of hyperbole. Moreover, Cari is simply wrong when he suggests that there was no evidence to demonstrate that he had any knowledge of potential officer misconduct. Since the jury was free to accept the testimony of Marcia Chacon that Cari had threatened to arrest Ms. Chacon's husband merely for asking why his car was towed by Spaulding, there is evidence that Cari was aware of potential officer misconduct. Of course, Cari wrote the false police report **after** he knew that Fr. Manship was working with others to prove that the police in East Haven

were engaged in racial profiling. Thus, it is absurd for Cari to claim that he had no idea about potential officer misconduct when he authored the knowingly false report about Fr. Manship's arrest.

Now that Cari seeks to set aside the verdict without a single claim of error, it is simply not possible to conclude that the jury must have been the rare "irrational jury" that would warrant the granting of a Rule 29 motion. In short, Cari is completely unable to satisfy his heavy burden to overturn the jury's verdict on any of the three convictions. When the appropriate standard is applied to all the evidence introduced at trial, there was more than sufficient evidence to uphold the jury's verdict on the conspiracy count, the false arrest count and the obstruction charge.

Therefore, Cari's Rule 29 motion should be summarily denied.

2. **Spaulding's Rule 29 Motion is Baseless**

In this case, there is no concern that Spaulding is an innocent person who was wrongly convicted. Like Cari, Spaulding also fails to cite any error in the record and instead, continues to rely on the same failed arguments that he advanced at trial. None of these arguments are sufficient to overturn the jury's verdict on the six counts of conviction.

For example, Spaulding's post-verdict claims regarding the computer car chats are the same arguments Spaulding's counsel advanced during cross-examination and made to the jury during counsel's closing argument. In short, it was for the jury to decide what, if anything, these chats meant. Spaulding is simply not entitled to ignore the chats by suggesting that they have been taken out of context. Indeed, when Lt. Butler was asked about the provoke email (Government Ex. 190) Butler explained that he told Spaulding **not** to provoke a car coming into East Haven from New Haven. Spaulding's reaction to that instruction from a superior

was to proclaim that it was his job as a cop "to provoke," not to sit on his heels. The jury was certainly entitled to conclude that Spaulding's proclamation reflected his attitude toward following the rules, *e.g.* he was the type of police officer who was more than willing to violate the oath and discriminate against persons on the basis of their race.

In any event, the jury was perfectly entitled to conclude that the chats between Spaulding and Zullo were conspiratorial conversations about their mutual desire to deprive Latinos of their civil rights. Moreover, the jury was free to conclude that these chats demonstrated that these two officers were fixated on La Bamba restaurant whose clientele was largely Latino. Quite simply, the suggestion that there was information brought out on cross-examination that a jury could have relied upon to find probable cause is of no moment. That the jury **could have relied** on some information does not mean that the jury **had to rely** on that information. Every convicted defendant can always say that there was some information adduced at trial that **could have led** the jury to acquit. It is for the jury to decide if that information is enough for an acquittal. In this case, a rationale jury was perfectly entitled to conclude that the information introduced during cross-examination was not sufficient to overcome the rest of the evidence introduced at trial.

In fact, the jury here heard many other additional facts that support the convictions for Spaulding. Spaulding's completely false statement to Fr. Manship in 2010 that he was not present when Manship was arrested, and that he does not know what happened was not only evidence of Spaulding's lack of credibility but it also demonstrated his desire to remove himself from this incident. The jury was free to conclude that Spaulding was running away from Cari, the author of the police report and the officer who arrested Manship. This is significant because on the night of Manship's arrest, Spaulding ran to the computer in his car

to try to support Cari's decision to arrest Manship. When Spaulding wrote the report on February 19, 2009 about his February 13, 2009 encounter with Fr. Manship, minutes after Fr. Manship's arrest by Cari, Spaulding included false information in the report -- that Manship **interfered** on February 13, 2009 when he video-taped Spaulding's traffic stop.[1] Spaulding's February 19, 2009 report of an incident that had occurred six days earlier was a transparent attempt to bolster Cari's arrest of Fr. Manship for similar conduct. Nevertheless, after the Fr. Manship video became public, and the words on the video demonstrated that both Cari and Spaulding knew Manship had a camera, Spaulding ran from the conspiracy - - and said as much to Fr. Manship in the recorded conversation made in February 2010.

Spaulding is simply mistaken when he suggests there was no evidence of a conspiracy. In light of the evidence to support the conspiracy between Cari and Spaulding, Spaulding's hyperbolic statement that the Government failed to introduce any evidence that there was an agreement between Spaulding **and anyone else** is simply absurd. The arrest of Fr. Manship, and the false reports authored by both Cari and Spaulding after that arrest, demonstrate a conspiratorial relationship between Spaulding and Cari. In addition, the chats between Spaulding and Zullo evidence as well as the January 21, 2009 arrests at La Bamba restaurant establish a conspiratorial relationship between Spaulding and Zullo.

As the Court well knows, the evidence against Spaulding went well beyond the arrest of Fr. Manship. Numerous witnesses, including members of the Marin family, John Espinosa ("JE") and Jose Luis Alvaracin ("JLA") testified about Spaulding's abusive conduct. Thus,

---

[1] The Court will recall that the video of the February 13, 2009 encounter between Spaulding and Fr. Manship was an exhibit at trial. At no time during that video did Spaulding tell Fr. Manship that he committed the crime of interference and nor did Spaulding arrest Fr. Manship for such a crime.

the jury had more than sufficient evidence, in the light most favorable to the Government, to support the jury's guilty verdict that Spaulding was a member of a conspiracy, engaged in excessive force, and arrested persons without probable cause.

The same could be said about the obstruction counts involving the false police reports - - Counts 7, 10 and 12. Nowhere in Spaulding's or Cari's memoranda is there any explanation for why the jury was not permitted to decide that the reports were false. Surely the defendants must recognize that there were two different versions of facts given to the jury -- one provided by each of the victims who was arrested, and one provided by the police reports written by the defendants. If Spaulding and Cari truly recognize that a Rule 29 motion cannot succeed when a jury is entitled to make credibility calls, the attack on the obstruction counts must fail as a matter of law. In short, the jury was free to conclude that the reports were false and that they were done in contemplation of, and to obstruct, a potential federal investigation.

The suggestion that Spaulding, Cari and Zullo never worked together is pure nonsense. All three officers routinely worked the same shift during the relevant time period in a relatively small police force. Spaulding and Cari are on tape together arresting Manship. Spaulding and Cari met at Goodys on the night of February 19, 2009. Zullo was in My Country Store with Spaulding and Cari when they were unlawfully searching the store that night for the store's surveillance video. Moreover, Zullo was present on January 21, 2009 when Spaulding arrested JLA and JE. In fact, Zullo was beating JLA in the cell while Spaulding was wishing JLA and JE a good night's sleep in their jail cells. Indeed, the overtime sheet, Ex. 941-943, show that both Spaulding and Zullo worked overtime the evening of January 21, 2009.

Simply saying that Spaulding's actions can be interpreted in only one way when the evidence is viewed in the light most favorable to the Government doesn't make it so. That Moises Marin ("MM") tried to prevent his face from being broken does not mean he resisted arrest. The jury was free to credit MM's testimony which was corroborated by his brother over the Yale Medical Records. Moreover, the two are not necessarily inconsistent. MM stated that he was pushed to the ground. The Yale medical records clearly support that MM's injuries are the result of an assault and MM reported to the medical staff that the man who assaulted him was a police officer. The fact that the Yale medical records indicate there was no kicking could simply mean that that the injuries most prevalent – the lip laceration – was not caused by a kick or kicking. Moreover, that there is **some evidence** to call MM's testimony regarding the kicking into question does not mean that a jury had to disbelieve MM's testimony. Indeed, there is no question that MM was hurt by Spaulding.

Moreover, the version of facts set forth in the police report suggesting some type of mob circling Spaulding's car is simply absurd. Certainly, if there was any type of mob circling a police officer, a trained officer, like Spaulding, would have immediately reported it to his dispatch center and many police cars would have been summoned to the scene. That did not happen. In short, the jury credited MM's version of events as they are more credible than what was written in the police report. Since it was for the jury to decide which version to believe, that credibility determination should not be overturned on a Rule 29 motion.

In sum, each of the counts has more than sufficient evidence to support the guilty verdicts. Indeed, the fact that Spaulding suggested that he did use force in his arrest report of MM but failed to admit that MM sustained injuries may explain why the jury found the report false. As proven at trial, MM was photographed with blood on his face but Spaulding failed

to provide any medical help.  There is also no question that MM's family called for an ambulance which arrived directly in front of the East Haven police department and that MM was provided medical assistance for the injuries sustained by Spaulding.  These facts further support why the jury credited MM's testimony about what happened that evening.  Moreover, when considered together with the other evidence - - e.g. car chats showing an anti-immigrant bias, car chats demonstrating a focus on La Bamba restaurant whose customers are primarily Latino, the fact that JLA and JE were also arrested at La Bamba, witness testimony that Spaulding's police vehicle was parked in front of La Bamba and that he routinely harassed La Bamba's Latino customers - - it is no surprise that the jury found MM, the owner of La Bamba, to be more credible than Spaulding's police report.  In short, Spaulding cannot prevail on a Rule 29 claim when there is more than sufficient evidence in the record for the jury to convict.

As for the January 21 2009 incident, if the jury believed JE and/or JLA, there is more than sufficient evidence to convict.  Both JE and JLA testified about what happened.  The fact that Officer Rybaruk corroborated JLA makes it even more understandable that the jury would convict Spaulding on the counts involving these arrests and find that Spaulding and Zullo were involved in a conspiracy to harass, intimidate and violate the rights of Latinos in the Town of East Haven.

Finally, with respect to the obstruction counts involving Spaulding (Counts 7 and 10), Spaulding's suggestion that Lt. Butler only told him **once** not to profile on the basis of race is of no moment.  As an initial matter, Lt. Butler's testified that he called Spaulding into his office to meet with him to discuss the racial profiling laws in Connecticut.  Lt. Butler was so concerned about this August 2008 meeting that he maintained written notes of the meeting.

The jury was certainly entitled to find that **after** Lt. Butler met with Spaulding, Spaulding was on notice that if he continued to profile on the basis of race, an investigation might follow. As a trained police officer, Spaulding could easily contemplate a potential civil rights investigation if he improperly detained Latinos, wrote false reports about his encounters with Latinos and used excessive force in dealing with a Latino who he arrested. That Lt. Butler signed off as the supervisor on Spaulding's reports does not mean that Spaulding could no longer contemplate a federal civil rights investigation. As was discussed at trial, a supervisor's review was to ensure that the police report included language to support probable cause, not to verify the truthfulness of the report. Since the supervisor relied on the police officer to report the truth of each incident, a supervisor's signature on a report does not equate with a truthful report.

Given the evidence in the record that could support a guilty verdict on all counts, and given the standard that this evidence must be viewed in the light most favorable to the Government, Spaulding's Rule 29 motion should not be granted.

C.      **Rule 33: Legal Discussion**

While this Court has authority under Federal Rule of Criminal Procedure 33(a) to order a new trial "if the interest of justice so requires," such power should be exercised "sparingly." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). In the context of a motion for a new trial under Rule 33, the Second Circuit instructs trial judges:

> *It long has been our rule that trial courts must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.* Where testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation. But the trial judge's rejection of all or part of the testimony

of a witness or witnesses does not automatically entitle a defendant to a new trial. The test is whether it would be a manifest injustice to let the guilty verdict stand.

Manifest injustice cannot be found simply on the basis of the trial judge's determination that certain testimony is untruthful, unless the judge is prepared to answer no to the following question: Am I satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt? In making this assessment, the judge must examine the totality of the case. All the facts and circumstances must be taken into account. An objective evaluation is required. There must be a real concern that an innocent person may have been convicted. It is only when it appears that an injustice has been done that there is a need for a new trial in the interest of justice. Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly.

*Sanchez*, 969 F.2d at 1414 (emphasis added, internal quotation marks and citations omitted) (reversing the grant of a new trial based on the district court's conclusion that the convictions were not supported by the weight of the evidence).

While Rule 33 contemplates that a court may evaluate the weight of the evidence and the credibility of the witnesses, it is well-settled that only in "exceptional circumstances" should the jury's credibility assessment and guilty verdict be discarded. *Id.* at 1413. Even if a court does conclude that a Government witness was not credible, the court should not grant a new trial unless it would be a "manifest injustice" to let the verdict stand, i.e., where, in light of the record as a whole, there is "a real concern that an innocent person may have been convicted." *Id.*

### D. <u>Defendants Cannot Meet Their Burden Under Rule 33</u>

There is no reason to set aside a guilty verdict under the "interests of justice" standard merely because defendants are unhappy with the verdict, are shocked by the verdict or think

they could win a retrial if they only had the chance.[2]  Neither defendant raises a single issue that would warrant the granting of a new trial.  While both defendants are obviously disappointed in the verdicts, neither defendant has even attempted to allege a single error that would explain the convictions on each and every count as some type of miscarriage of justice.

Quite simply, the defendants have nothing to offer to explain the jury's verdicts as anything other than a thoughtful result by a hard working jury that made its own credibility decisions.  For example, despite the fact that the Government's case lasted three weeks, involved 15 witnesses, and numerous trial exhibits, neither defendant is suggesting that the Court or the Government committed any error in offering these witnesses or the trial exhibits.  Moreover, despite the fact that the Court's final jury charge was more than sixty pages long, the only argument raised in either defendants' Rule 33 motions relating to the jury instructions is the issue of "materiality" in the obstruction count.  As noted earlier, there is no "materiality" requirement under section 1519.  In any event, none of the Court's instructions was erroneous and defendants do not even attempt to make such a suggestion.  Finally, neither

---

[2] Of course, if the defendants and their counsel truly believed there was **no evidence** in the record to support any conviction, and they believed that the jury would **absolutely acquit** them on all counts, it is curious that the defendants would move for a mistrial **during jury deliberations** rather than permit the jury to render its verdict. Indeed, the joint mistrial motion was filed **after** the Friday October 18, 2013 jury question asking for clarification about when a person is arrested.  Since that question directly addresses the issue of whether there was probable cause to arrest at the time of the arrest, it is not surprising that the defense would view that question as a problem for their hopes of an acquittal. Surely if the jury thought **there was probable cause to arrest before an arrest happened**, the jury would not be focusing on the moment when a person was arrested.  Given that the Government offered evidence at trial that Fr. Manship was already under arrest and in one handcuff before the camera was removed from his hand, the jury's question on Friday October 18, 2013 was an ominous sign for the defense.  In any event, the Court should view the defense counsels' decision to file a joint mistrial motion **during jury deliberations** as a sign that the experienced defense counsel in this case realized even before the verdicts were returned that there was sufficient evidence in the record for a jury to convict their clients.

defendant has suggested that any argument made by the Government in its closing or in the rebuttal was improper. Given the defendants' complete failure to identify, let alone demonstrate, a single error in a lengthy trial, there is simply no reason to order a new trial before a new jury.

The simple truth is that the defendants were represented by highly experienced defense counsel including one counsel who was a former supervisor in the United States Attorney's Office for the District of Connecticut. Both counsel fought aggressively to convince the jury that their clients were not acting criminally but were merely doing their jobs as trained police officers. Given the different version of events offered by the parties at trial, the jury was required to make numerous credibility determinations. In doing so, the jury was certainly free to reject the zealous arguments made by each defense counsel.

To be clear, the jury had every right to credit the testimony of numerous Government witnesses who consistently explained to the jury that the statements contained in the defendants' police reports were false. The jury had every right to conclude that the defendants knowingly authored false police reports in an effort to cover-up and conceal the fact that the defendants arrested victims without probable cause. The jury was certainly entitled to conclude that the so-called alternative theories of probable cause offered by defense counsel (that were not set forth in the police reports) were an after-the-fact and desperate attempt to justify the false arrests rather than a legitimate theory of probable cause. Furthermore, the jury was entitled to believe that each of the defendants was a member of a conspiracy to violate the civil rights of Latinos and their advocates. Finally, the jury was entitled to conclude that each defendant authored false reports in contemplation of a federal civil rights investigation. That the defendants disagree with each of the jury's conclusions is simply not a

19

basis to grant a new trial.

In short, a new trial motion under Rule 33 is not to be granted merely because a defendant would like a "do-over" or a "mulligan" in an effort to avoid a guilty verdict before a new jury. As the Court well knows, defendants Cari and Spaulding had a fair trial before an impartial jury which they participated in choosing after a thorough voir dire. In the absence of any purported error, each of these defendants will have to accept the fact that the jury found them guilty on all counts. In sum, this is simply not a case where there is any concern that "an innocent person may have been convicted."

Accordingly, the Court should summarily deny defendant Cari's and Spaulding's Rule 33 motions for a new trial.

## Conclusion

By failing to allege a single error, the defendants have not, and cannot, meet their burden to obtain a new trial under Rule 33. Thus, the Court should not grant a new trial where the same exact evidence would merely be presented to a new jury by the same witnesses. Given that the defendants are not entitled to a new trial, the Court should also deny their motions for acquittal under Rule 29. *See United States v. Milikowsky,* 896 F. Supp. 1285, 1312-13 (D. Conn. 1994) (where "Court has already determined that the evidence presented by the government was sufficient for purposes of withstanding a motion for a new trial pursuant to Fed. R. Crim. P. 33 . . . [and] [b]ecause the Defendants must meet a standard significantly more stringent than that for a new trial in order to obtain a judgment of acquittal, the Defendants motion for judgment [of acquittal] must be denied, a fortiori.); *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005)(Because the power to grant a motion for a new trial is broader than the court's power to grant a motion for a judgment of acquittal, our

determination that defendants are not entitled to a new trial means that they are similarly not entitled to a judgment of acquittal).

Accordingly, for the reasons set forth above, the Court should summarily deny each defendant's motion for acquittal pursuant to Rule 29 and each defendant's motion for a new trial pursuant to Rule 33.

Respectfully submitted,

DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY

/S/
RICHARD J. SCHECHTER
SENIOR LITIGATION COUNSEL
FEDERAL BAR #ct24238
UNITED STATES ATTORNEY'S OFFICE
1000 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000 (phone)
(203) 579-5550 (fax)

/S/
KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR #ct24433
UNITED STATES ATTORNEY'S OFFICE
1000 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000 (phone)
(203) 579-5550 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF.

\_\_\_/S/_____
Krishna Patel
Assistant U.S. Attorney