## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **3:12CR17 (AWT)** |
| **v.** | : | |
| | : | **JANUARY 10, 2014** |
| **DENNIS SPAULDING** | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The Defendant, DENNIS SPAULDING, respectfully files this Memorandum as an aid to the Court in sentencing scheduled for January 21, 2014 at 2:00pm in the United States District Court, Hartford, CT in front of the Honorable Alvin W. Thompson, U.S.D.J. The arguments presented in this sentencing memorandum are based, in part, on information presented in the Pre-Sentence Report ("PSR") authored by United States Probation Officer Mark Myers and discussions with Assistant United States Attorneys Krishna Patel and Richard Schechter. Part I of this memorandum discusses the background, procedural history and circumstances surrounding Mr. Spaulding's case; Part II discusses the post-Booker sentencing scheme; Part III presents a discussion of Mr. Spaulding's applicable Federal Sentencing Guidelines range; Part IV presents the argument that a downward departure should be granted in this case; Part V presents the argument that a non-Guideline sentence should be imposed in this case pursuant to 18 U.S.C. §3553(a); and Part VI discusses a sentencing proposal for the Court's consideration.

## I. BACKGROUND and FACTUAL CIRCUMSTANCES

Mr. Spaulding appeared in the United States District Court at Hartford, CT, before the Honorable Alvin W. Thompson, U.S.D.J., during the months of September – October 2013 for a trial on a multi-count Superseding Indictment charging him with the following criminal offenses: Count 1: Conspiracy Against Rights, 18 U.S.C. § 1241, Count 5, Deprivation of

Rights: Unreasonable Force, 18 U.S.C. § 242; Counts 6, 9: Deprivation of Rights: False Arrest, 18 U.S.C. § 242; and Counts 7, 10: Obstruction of Justice: False Report, 18 U.S.C. § 1519. Jury selection took place on September 17, 2013 and evidence began on September 23, 2013. On October 21, 2013, a jury of twelve found Mr. Spaulding guilty of all counts.

With respect to potential punishments: Count One is punishable by up to 10 years' imprisonment, 3 years' supervised release, a $250,000 fine and a mandatory $100 special assessment; Count Five is punishable by up to 10 years' imprisonment, 3 years' supervised release, a $250,000 fine and a mandatory $100 special assessment; Counts Six and Nine are each punishable by up to 1 year of imprisonment, 1 year of supervised release, a $100,000 fine and a mandatory $100 special assessment; and Counts Seven and Ten are each punishable by 20 years' imprisonment, 3 years/ supervised release, a $250,000 fine and a mandatory $100.00 special assessment. Mr. Spaulding was ordered released on a $300,000 partially secured bond on January 24, 2012 and has been at liberty since that date. During this two year period of time, he has remained in full compliance with the conditions of his release.

Mr. Spaulding does not agree with the Offense Conduct as described in Mr. Myers' PSR – and this position is consistent with the not guilty plea that Mr. Spaulding maintained both before and during trial. The question that remains, therefore, is what type of sentence is necessary to achieve a sentence that comports with the factors set forth in 18 U.S.C. § 3553(a). The Defendant respectfully suggests, for the reasons that follow, that in light of the individual circumstances present in this case, a sentence of imprisonment within the applicable Guidelines range would be punishment far greater than necessary to serve the statutory purposes of sentencing. In consideration of the factors outlined in 18 U.S.C. § 3553(a), it is requested that the Court sentence Mr. Spaulding to a non-Guideline sentence which includes a period of home confinement and community service.

**A comment on the evidence presented at trial.**

At trial, the Government claimed that Sergeant John Miller and Officers Jason Zullo, Dennis Spaulding and David Cari conspired to use their status and authority as law enforcement officers to injure, oppress, threaten, and intimidate various members of the East Haven community in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States. The Defendants were labeled "Bullies with Badges" and portrayed as a rogue gang of police officers working together to target and harass the Latino community in East Haven. While ample probable cause existed for the arrest of M.M., J.L.A., J.E. and F.J.M. and no criminal intent to unlawfully arrest them, the jury found differently. While there was no conspiracy to violate the constitutional rights of Father Manship or anyone else in the East Haven Community, the jury found differently. Lastly, while there was no false police report filed to justify the arrest of M.M. and J.L.A./J.E., the jury found differently. The evidence presented at trial was wholly insufficient to sustain the convictions as found by the jury.

What should not be lost on this Court is that the problem addressed by the New Haven Police Department bulletin – that is, illegal license plates. There clearly was a lot of criminal activity committed by East Haven residents – including residents who were immigrants and the Latinos. Mr. Spaulding and other East Haven police officers initiated a program that investigated residents that had out-of-state plates on their vehicles. Hundreds of violators were identified. Multiple people had their vehicles registered out-of-state at the same address. As the New Haven Police Department recognized, there was rampant fraud – including insurance fraud. Fraudulent insurance cards were seized as well as fake licenses and illegal plates. And this was being done for many reasons – the most important of which is public safety. East Haven police officers such as Dennis Spaulding identified a problem – and was dedicated

enough to do something about it, instead of turning away and letting the criminal activity continue. He is now being punished for it.

Dennis Spaulding is not a racist, and the trial did not prove on any level that he is. The evidence presented at the trial showed that he worked the busiest shift of the day, on the busiest road in town, in the most heavily populated Latino area of the town. While the trial placed the focus on the motor vehicle stops of the complaining witnesses, the fact is that Mr. Spaulding arrested hundreds of individuals of all colors, creeds and ethnicities. His multiple MADD awards (attached) are an example of his unbiased enforcement of the law. Simply put, Dennis Spaulding was color blind when enforcing the laws of the Town of East Haven, and the trial unfairly suggested otherwise. And, as for the allegation of unreasonable force, both the physical evidence (or lack thereof) and the cross-examination of Mr. Marin should have convinced the fact-finder that his complaint was not credible.

And, as for Father Manship, the Court should be reminded that he admitted to going to East Haven some 30-50 times solely to lay in wait and monitor the actions of the police officers, but when the officers tried to monitor the actions of the lawbreakers, they were condemned for their actions.

## II.     SENTENCING SCHEME POST-__BOOKER__

This Court is certainly aware that the mandatory mature of the Federal Sentencing Guidelines became advisory as a result of the United States Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). The U.S. Supreme Court later articulated in Rita v. United States, 551 U.S. 338 (2007) and Gall v. United States, 552 U.S. 38 (2007), that in sentencing, there is no presumption that the Guidelines must apply. Since the decision in Booker, while the sentencing court is still required to consider the applicable Guidelines range, it must also consider the other factors enumerated in § 3553(a) when imposing sentence.

In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Second Circuit reviewed Booker and explained how courts should now approach sentencing and the determination of a fair and just sentence. To determine a sentence under Crosby's model, a court must first calculate the Defendant's guidelines and consider them. Next, the sentencing court must consider whether departures are appropriate. Third, the court must decide, after considering the guidelines and all of the factors set forth in 18 U.S.C. 3553(a), whether to impose a guideline sentence (including a sentence that results from permissible departures), or a non-guideline sentence. Id. It is 18 U.S.C. § 3553(a) that mandates that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the [articulated] purposes [of sentencing]." See, e.g., United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006) (Discussion Of The Parsimony Clause; District Court Must Impose Below-the-Range Sentence If It Finds that Such a Sentence Serves the Ends of Sentencing as Well as a Guidelines Sentence).

## III.    MR. SPAULDING'S GUIDELINES RANGE IS 41 – 51 MONTHS.

Mr. Spaulding disagrees with the pre-sentence report's calculation of his Guidelines range. Mr. Myers, through his PSR, believes that Mr. Spaulding's Guidelines range is 57-71 months based upon a total offense level of 25 and a criminal history category of I (Mr. Spaulding has no prior criminal history), calculated in this manner:

**Group 1; Counts 1, 5, 6, and 7, as they pertain to victim MM**: Deprivation of a Constitutionally Protected Right; False Report

> **Base Offense Level**: The guideline for 18 U.S.C. § 241 offenses is found in USSG §2H1.1. That section provides that for an offense involving an individual's civil rights, the base offense level is that which is applicable to the underlying offense; USSG §2H1.1(a). The Guideline for 18 U.S.C. 1519 offenses, Obstruction of Justice, False Report, is found in USSG §2J1.2 and the base offense level is 14; USSG §2J1.2(a).                                    **14**

> **Specific Offense Characteristics**: Pursuant to USSG §2J1.2(b)(2), if the offense resulted in substantial interference with the administration of justice, increase by three levels. Mr. Spaulding's false report required MM to face criminal charges in state court. Pursuant to §2J1.2(b)(2), comment.(n.1), substantial interference with the administration of justice includes unnecessary expenditure of substantial government or court resources.                    **+3**

> **Specific Offense Characteristics**: The offense of conviction took place while Mr. Spaulding was involved in his duties as an East Haven police officer. Pursuant to USSG §2H1.1(b)(1)(B), if the offense was committed under color of law, a six level increase is appropriate.                                        **+6**

> **Victim Related Adjustment**:  None.                                            **0**

> **Adjustment for Role in the Offense**:  None.                                  **0**

> **Adjustment for Obstruction of Justice**:  None.                               **0**

> **Adjusted Offense Level** (Subtotal):                                          **23**

**Group 2; Counts 1, 9, and 10, as they pertain to victim JLA**: Deprivation of a Constitutionally Protected Right; False Report

> **Base Offense Level**: The guideline for 18 U.S.C. § 241 offenses is found in USSG §2H1.1. That section provides that for an offense involving an individual's civil rights, the base offense level is that which is applicable to the underlying offense; USSG §2H1.1(a). The Guideline for 18 U.S.C. 1519 offenses, Obstruction of Justice, False Report, is found in USSG §2J1.2 and the base offense level is 14; USSG § 2J1.2(a).                                 **14**

> **Specific Offense Characteristics**: Pursuant to USSG §2J1.2(b)(2), if the offense resulted in substantial interference with the administration of justice, increase by three levels. Mr. Spaulding's false report required JLA to face criminal charges in state court. Pursuant to §2J1.2(b)(2), comment.(n.1), substantial interference with the administration of justice includes unnecessary expenditure of substantial government or court resources.                    **+3**

<u>Specific Offense Characteristics</u>: The offense of conviction took place while Mr. Spaulding was involved in his duties as an East Haven police officer. Pursuant to USSG §2H1.1(b)(1)(B), if the offense was committed under color of law, a six level increase is appropriate.                    **<u>+6</u>**

<u>Victim Related Adjustment</u>:  None.                                                   **<u>0</u>**

<u>Adjustment for Role in the Offense</u>:  None.                                         **<u>0</u>**

<u>Adjustment for Obstruction of Justice</u>:  None.                                      **<u>0</u>**

<u>Adjusted Offense Level</u> (Subtotal):                                                 **<u>23</u>**

**<u>Multiple Count Adjustment</u>:**

| Group # | Adjusted Offense Levels | Units |
|---------|------------------------|-------|
| 1 | 23 | 1 |
| 2 | 23 | 1 |
| Total Number of Units: | | 2 |

**Greater of the Adjusted Offense Levels Above:**                                        **23**

**Increase in Offense Level:**                                                           **<u>+2</u>**

<u>Combined Adjusted Offense Level</u>:                                                   **25**

<u>Chapter Four Enhancement</u>:  None.                                                   **<u>0</u>**

<u>Acceptance of Responsibility</u>:  None.                                               **<u>0</u>**

**TOTAL OFFENSE LEVEL**:                                                                 **25**

Mr. Spaulding agrees with the majority of this calculation <u>except for</u> the three-level enhancement pursuant to USSG §2J1.2(b)(2) where the base offense level is increased "if the offense resulted in substantial interference with the administration of justice."  (While he agrees with the majority of the calculations, it should be noted that the enhancements substantially overlap while unduly magnify the sentence.)   These three-level enhancements appears in paragraphs 44 and 51 of the PSR.  It is submitted that the offense did not result "in substantial interference with the administration of justice."   While it is understood that Mr. Spaulding's report required JLA and MM to face criminal charges in state court, what did not occur here is

"unnecessary expenditure of substantial government or court resources." While we argued that these arrests were legal and supported by probable cause, assuming they weren't then there was certainly no unnecessary expenditure of substantial government or court resources. Their cases were pending for a brief period of time in New Haven Superior Court GA#23 and the amount of resources utilized were virtually nil.  [Exhibits]

## IV.     A DOWNWARD DEPARTURE SHOULD BE GRANTED.

### A.   A Downward Departure Should Be Granted Due To Mr. Spaulding's Extreme Vulnerability To Abuse In Prison.

It is respectfully requested that the Court grant a downward departure, namely Mr. Spaulding's extreme and unusual susceptibility to abuse in prison by virtue of the fact that he is a police officer and the extreme notoriety of the case.  Under current case law, to qualify for a downward departure a defendant's vulnerability must be so extreme as to substantially affect the severity of confinement, such as where only solitary confinement can protect the defendant from abuse." United States v. Graham, 83 F.3d 1466, 1481 (D.C. Cir. 1996) (citing United States v. Lara, 905 F.2d 599, 602-03 (2d Cir. 1990)).  While mere membership in a particular class of offenders that may be susceptible to abuse in prison does not in and of itself merit a departure for vulnerability to abuse in prison, see United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997), the district court must make an individualized determination. See Koon v. United States, 518 U.S. 81, 112 (confirming that district court could depart for vulnerability given "'extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers'") (quoting United States v. Koon, 833 F. Supp. 769, 785-86 (C.D. Cal. 1993)).

One of the original cases on this issue is the landmark case of <u>Koon v. United States</u>, 518 U.S. 81 (1996), where, in sentencing police officers who have been convicted of depriving a criminal suspect of federal rights under color of law in violation of 18 U.S.C. § 242, by beating the suspect during an arrest, a district court did not abuse its discretion by considering the officers' susceptibility to abuse in prison.  <u>Id.</u> at 111-112.  The U.S. Supreme Court decided that the District Court did not abuse its discretion is departing downward on the theory that the officers would be particularly likely to be targets of abuse during their incarceration due to the unusual nature of the case – i.e., the existence of a videotape of the unreasonable force, their status as police officers, the widespread publicity of the case and the emotional outrage that existed in the public sphere.  <u>Id.</u>

Cases from other circuits that have ruled similarly on this issue and relied upon Koon to grant downward departures.  <u>See</u>, <u>e.g.</u>, <u>United States v. LaVallee</u>, 439 F.3d 670, 708 (10th Cir 2006) (while the fact that police officers are susceptible to abuse in prison does not, alone, warrant a downward departure, see Koon, a departure is warranted if the defendant's susceptibility to abuse is compounded by "widespread publicity and emotional outrage . . . [this] is just the sort of determination that must be accorded deference by the appellate courts.");  <u>United States v. Parish</u>, 308 F.3d 1025, 1032-33 (9th Cir 2002) (the Defendant, not a police officer but a possessor of child pornography, was an important factor cited by the district court as increasing Parish's susceptibility to abuse in prison (<u>Koon</u> allows the district court to take into account all the circumstances of the crime and the defendant and to make an appropriate individualized determination);  <u>United States v Rausch,</u> 570 F.Supp.2d 1295   (D.Colo. 2008) (where D convicted of possession of child porn. and guidelines 120 months, court orders sentence of 1 day jail and supervised release for life with home detention up to probation office in part because   "client's vulnerability to victimization in prison in an unnecessary and

unacceptably high risk…[and] violence against inmates…does occur and that vulnerable inmates are at greater risk of violence than typical inmate populations." ).

Courts in this District have granted a downward departure for reasons identical to this case (his status as a police officer, the widespread publicity of the case and the emotional outrage that existed in the public sphere). See United States v. Volpe, 224 F.3d 72, 75 (2d Cir. 2000). In that case, the Defendant was entitled to two-level departure because of the extraordinary notoriety of the case coupled with his status as a police officer left him unusually susceptible to abuse in prison and that defendant may have to spend most his time in segregation); see also United States v. Bruder, 103 F.Supp.2d 155, 182 (E.D.N.Y. 2000) (same basic facts, was co-defendant of Justin Volpe). These two cases represent the very few cases in this District where a police officer was a convicted Defendant.

It is also worthy to note that while Mr. Spaulding is 30 years old, he appears to be much younger. In fact, during the pendency of the case, multiple persons have asked if Mr. Spaulding was 18 years of ago. This obvious factor should be considered in evaluating whether a departure is warranted in this section.

**B. A Downward Departure Should Be Granted Due To The Fact That Mr. Spaulding's Engaged In Exceptional Charitable And Community Activities and Good Works.**

A downward departure should be granted due to Mr. Spaulding's exceptional charitable and community activities and good works. As the attachments in Exhibits A and B demonstrate, Mr. Spaulding gave much of himself to the Town of East Haven and its residents. He has gone above and beyond during his years as a police officer to volunteer his time with the community and with school children. In one letter from Exhibit B from the Vietnam Veterans of America, the chapter president notes that Mr. Spaulding has been volunteering his time for many years – assisting with its annual picnics as well as with candlelight vigils,

Memorial Day parades and Veteran's Day road races. He has protected his community with the hundreds of DWI arrests in town. He has always regarded his multiple Mothers Against Drunk Driving Appreciation Awards (2008-2011) as highlights of his career.

Courts have granted downward departures based upon this factor. See, e.g., United States v. Tomko, 562 F.3d 558 (3d Cir. 2009) (en banc) (where defendant convicted of tax evasion of $225,000, and guidelines 12-18 months, court's sentence to probation on condition of one year home detention not unreasonable in part because of defendants charitable activities and good deeds); United States v Thurston, 544 F.3d 22 (1st Cir. 2008) (where defendant convicted of medicate fraud over five million dollars and guidelines capped at 60 months, district court's sentence of 3-months affirmed where district judge cited chartiable good works, among other things); United States v. Jones, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of multiple factors, it considered defendant's long history of community service); United States v. Bennett, 9 F.Supp.2d 513 (E.D.Pa. 1998) (in largest charitable fraud in history, where under §5H1.11 defendant's civic and charitable good deeds were extraordinary, together with other grounds, departure from 232 to 92 months warranted – D had contributions in the areas of substance abuse, children and youth, and juvenile justice were well documented and well recognized.).

## C. The Court Should Depart Based Upon Adverse, Collateral Consequences

The consequences that confront Mr. Spaulding are akin to -- and actually worse than -- those in cases in which other courts have granted downward departures based on the collateral consequences of a defendant's conviction. See, e.g., United States v. Gaind, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (granting 2-level downward departure to defendant who owned and operated EPA testing business; bar from participating in federal program effectively eliminated

potential for recidivism); *United States v. Speed Joyeros, S.A.,* 204 F. Supp. 2d 412, 440-41 (E.D.N.Y. 2002) (granting 2-level downward departure to defendant who was prohibited from participating in jewelry trading business during period of supervised release; likelihood of immediate repeat money laundering offense was eliminated); *United States v. Samaras,* 390 F. Supp. 2d 805, 809 (E.D. Wis. 2005) (imposing non-Guidelines sentence for fraud scheme in which defendant ran $1.6 million in proceeds through his check cashing business because Guidelines range was "greater than necessary to satisfy the purposes of sentencing;" "as a consequence of his conviction and sentence, defendant lost a good public sector job, [a] factor not considered by the Guidelines"); *United States v. Redemann,* 295 F. Supp. 2d 887, 895-97 (E.D. Wis. 2003) (granting 2-level downward departure where defendant "was barred by order of the Federal Reserve from participating in any capacity in a federally-insured financial institution," thus reducing the likelihood of recidivism).

        As a consequence of this conviction, Mr. Spaulding has lost the ability to be a police officer and thus his ability to repeat the offenses of conviction is negligible. Further, all of his best and closest friends were fellow law enforcement officers. Because law enforcement officers are prohibited from associating with convicted felons, Mr. Spaulding will also be losing all of his best and closest friends, and upon release, he will have to rebuild without some of his past friendships. This collateral consequence was not contemplated by the Guidelines and represents a particularly severe collateral consequence to the fact of his conviction.

**D. The Court Should Depart From the Guidelines Because Substantially Overlapping Enhancement(s) Unduly Magnify the Sentence.**

        The Court should depart from the Guidelines because substantially overlapping enhancements unduly magnify the sentence. In United States v. Jackson, 346 F.3d 22, (2d Cir. 2003), the Second Circuit vacated the defendant's sentence and remanded for the district court

to consider departing from the Guidelines because serial, overlapping enhancements resulted in a sentence which resulted in an enhanced sentence which the Sentencing Commission had not contemplated. In citing *United States v. Lauersen*, 343 F.3d 604 (2d Cir. 2003), the Court ruled that that in some circumstances an accumulation of somewhat overlapping enhancements, even if not amounting to double counting, can justify a downward departure. Although the enhancements were found to be permissible, there were also found to substantially overlap to such an extent that a departure was warranted. As in *Lauersen*, it is submitted that the enhancements in Mr. Spaulding's case have the same effect. The unadjusted base offense level of 14 would ordinarily trigger a sentence of 15 to 21 months. The first enhancement (if applicable) results in a 6 level increase to a range of 33 to 41 months – and this enhancement alone doubles the imprisonment range. If the additional three point enhancement applied, the range goes up to 46 to 57 months imprisonment. Finally the grouping rules add two more level, raising the range to 57-71 months. This represents a nearly 400% increase over his base offense level. This is precisely the type of unwarranted, serial increase in the imprisonment range which the *Lauersen* court found objectionable. This Court, therefore, should seriously consider departing downward below the advisory Guidelines imprisonment range.

**E.   A Downward Departure Should Be Granted Due To A Combination of Factors.**

If the Court does not believe that the above two departure requests exist to an exceptional degree, then it is requested that the Court consider granting a downward departure by considering a combination of the same factors. Specifically, it is requested that the Court consider downwardly departing due to the extreme vulnerability to abuse in prison, his exceptional charitable and community activities and good works, as well the loss of his career as a police officer, the overlapping nature of the applicable sentencing enhancements and his family ties and responsibilities.

## V.       A NON-GUIDELINE SENTENCE SHOULD BE IMPOSED.

In this section, Mr. Spaulding wishes to present a sentencing discussion based upon the first and third branches of the <u>Crosby</u> sentencing model – a discussion of the Defendant's Guidelines and then a discussion of relevant factors under 18 U.S.C. § 3553(a).

### A.   Mr. Spaulding's Federal Sentencing Guidelines Range.

As noted above, Mr. Spaulding's Guidelines range, according to the PSR, is 57 – 71 months of imprisonment. Mr. Spaulding argues that his range is 41 – 51 months' imprisonment.

### B.   Application of 18 U.S.S.C. § 3553(a) factors.

Section 18, United States Code, § 3553(a) provides the overall framework within which a sentencing judge must determine the appropriate sentence for a defendant.  While not all of the factors contained in the statute will apply in every case, many of them do.  In this case, the factors most directly relevant that the Court should consider are:

> "(1) the nature and circumstances of the offense and the history and
> characteristics of the Defendant;
> (2) the need for the sentence imposed:
> > (A) to reflect the seriousness of the offense, to promote respect for the
> > law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public;
> > (D) to provide the defendant with needed educational or vocational
> > training, medical care, or other correctional treatment in the most
> > effective manner;"
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for –
> > (A) the applicable category of offense committed by the applicable category of
> > defendant as set forth in the Guidelines…;
> (5) any pertinent policy statement issued by the Sentencing Commission;
> (6) the need to avoid unwanted sentence disparities among defendants with similar
> records who have been found guilty of similar conduct…

Thus, while a sentencing court must consider the applicable Guidelines sentence, there is no longer a presumption that such a sentence satisfies the objectives of § 3553(a). Significantly, neither § 3553(a) nor the majority opinion in <u>Booker</u> suggest that the sentencing

court should give the Guidelines any greater consideration than any of the other factors contained in § 3553(a).

18 U.S.C. § 3553(a) provides that the Court "shall impose a sentence sufficient, but not greater than necessary" to achieve the goals of just punishment, specific and general deterrence, and to provide needed educational, vocational, medical care or other correctional treatment in the most effective manner. Each of these goals can be met in this case with a non-Guidelines sentence. Such a sentence would serve the goal of just punishment because it is a significant deprivation of liberty and it sufficiently punishes the Defendant's conduct in this case.

### i. 18 U.S.C. § 3553(a)(1): Nature, Circumstances and History of the Defendant.

Dennis Emerson Spaulding, Jr. was born on February 16, 1983, in New Haven, CT. PSR ¶ 65. He is the youngest of three children born to the legal union of his birth parents Dennis Sr., 61, and Edna Tippett (nee Smith), 62. PSR ¶ 65. He was raised by his mother and stepfather Kenneth Tippett, Sr., 64, since he has been a toddler. PSR ¶ 65. He grew up in a very loving household in the town of East Haven amidst positive surroundings though his siblings dealt with some issues in their younger years. PSR ¶ 66. His childhood experience was free of traumatic events or abuses of any kind, and he was well supported and cared for and that there were no instances of any drug, alcohol, or physical abuse in the home. His two siblings from his mother's marriage to his birth father are in their 30s and currently reside in Connecticut. PSR ¶ 67. He also has a half-sibling from his mother's marriage to his stepfather as well as two adopted siblings (who were adopted by his mother and Mr. Tippett when Mr. Spaulding was approximately three years old). PSR ¶ 67. Dennis' mother was interviewed for the pre-sentence report and she described him as a happy, successful young man who succeeded in school academically and athletically. PSR ¶ 69. She also reported that Dennis

knew since he was six years old that he wanted to be a police officer and was determined to become one. PSR ¶ 69.

Mr. Spaulding advised that he married Nicole Palmarozza, 28, on November 6, 2010, after dating her for four years. PSR ¶ 71. The couple has two children – ages 28 months and two months – and the family unit currently live in their family home in East Haven. PSR ¶ 71. Mrs. Spaulding is employed as a registered nurse at Yale-New Haven Hospital in New Haven, where she has worked in the post-partum maternity unit since June 2010. PSR ¶ 72. She advised that she is a "charge" nurse at the present time and manages a floor of nurses who serve between 28 and 45 beds at the hospital. PSR ¶ 72. Mrs. Spaulding knows first-hand how the prosecution of her husband has caused their family a tremendous amount of stress and anguish, however it has also brought the family closer. PSR ¶ 72-73. Mr. Spaulding has raised his 28-month old son as a stay-at-home father since his 2011 administrative leave from the East Haven Police Department and now does the same for their daughter. PSR ¶ 73. The family will have to seek alternative childcare during Mr. Spaulding's incarceration while his wife financially supports the family. PSR ¶ 73.

Mr. Spaulding graduated from East Haven High School in East Haven in 2001. He then received his associate's degree in Criminal Justice from Briarwood College in Southington, Connecticut in 2007. PSR ¶ 77. Mr. Spaulding was hired as a police officer for the East Haven Police Department on March 24, 2005. PSR ¶ 78. He was on paid administrative leave from department from July 5, 2011, through June 2013 then was unpaid administrative leave until October 22, 2013 where he was permitted to retire from the police department. PSR ¶ 78. Prior to his employment as a police officer, he was employed consistently since 1999. PSR ¶ 79 – 81.

A brief note regarding Mr. Spaulding's finances and his ability to pay a fine: the pre-sentence report accurately demonstrates his current financial position. PSR ¶ 82. Mr. Myers concluded that these finances suggest that he may be able to pay a fine within the applicable fine range. PSR ¶ 83. It is worth noting, however, that a lot of his assets currently are being used as security for his $300,000 bond. Furthermore, pursuant to U.S.S.G. §5E1.2(d)(3), the Court shall consider that substantial burden that a significant fine would place both on him but more importantly on his wife and two young children – when the family unit has to live for a period of time with only one parent earning money.

As previously stated, Exhibit A attached to this memorandum contains a series of letters and newspaper articles that demonstrate Mr. Spaulding's achievements and good deeds. Furthermore, see Exhibit B (also attached) for many letters of support, all of whom present Mr. Spaulding as a well-liked and respected individual who is universally respected.

    **ii. 18 U.S.C. § 3553(a)(2): Need For Sentence Imposed to Reflect Seriousness of the Offense and Promote Deterrence.**

        **1. A Guidelines sentence is not needed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment of the offense.**

A Guidelines sentence is unnecessary in order to reflect the seriousness of the offense and to promote deterrence and just punishment. Assuming that the baseline is now the 24 month sentence that Jason Zullo recently received, there truly is no need for Mr. Spaulding's sentence to be any higher in order to send the message and promote specific and general deterrence. If the Court wants to distinguish Mr. Spaulding from Mr. Zullo, then its sentence should be marginally higher than the Zullo sentence. Such a sentence would certainly reflect the seriousness of the offense and provides just punishment. Moreover, Mr. Spaulding has been stripped of his profession, deprived of his source of income, labeled a convicted felon,

with all the attendant stigma, has been publicly shamed and has had to endure the emotional and financial strains of the investigation and prosecution. If the defendant's proposal is accepted, Mr. Spaulding will have significant restrictions on his liberty for an extended period while requiring that he contribute to his community.  An extended sentence of probation, home confinement and community service would also reflect the seriousness of the offense and provides just punishment.

Likewise, any interest in promoting respect for this law has certainly been served. This case received immense media attention and public scrutiny. Police officers all across the State are on notice that certain police conduct could result in federal prosecution, conviction, the end of a career as a police officer and public humiliation.  Undoubtedly this conviction may even have a chilling effect on police officers throughout the State when utilizing force or investigating certain persons/crimes.

It is worthy to note that Mr. Myers, at paragraph 100 of his PSR, suggested that a non-Guidelines sentence may be practical.  Specifically, he stated that "Mr. Spaulding has no prior criminal convictions and has never served a period of confinement. Further, as Mr. Spaulding will not be permitted to resume work as a police officer, the likelihood of recidivism with respect to a similar crime is negligible. The Court might wish to consider whether imposition of a sentence within the advisory guideline range is more than necessary to accomplish the purposes of sentencing."  Mr. Spaulding asks the Court to seriously consider Mr. Myers' statement in fashioning his sentence.

## 2. A Guidelines sentence is not necessary to afford adequate deterrence to criminal conduct.

Another factor is the need to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). No one observing the toll this prosecution has had on Mr. Spaulding

would doubt its deterrent impact. Prior to the charges that have brought Mr. Spaulding before this Court, he had an impeccable criminal record with no history of past criminal behavior. Mr. Spaulding is not likely to engage in future criminal activity. This is especially so given his inability to act police officer following his conviction. He will never again be employed in law enforcement that is charged with making split-second judgments on a daily basis. Mr. Spaulding has lost the job he loved, lost his source of income and has spent countless sleepless nights wondering what the end result will be. His family is supporting them wholeheartedly. A non-Guidelines sentence will include severe restrictions on his liberty for an extended period. In fact, keeping Mr. Spaulding in the community under severe restrictions will serve as a constant reminder to his community of the consequences of his criminal conduct. Such a sentence will have a greater deterrent impact than warehousing him at taxpayer expense – particularly where a condition can be imposed that requires him to continue to give back to his community.

Therefore, considering the need for the sentence to provide adequate general and specific deterrence, a non-Guidelines sentence would be appropriate. As the Second Circuit has observed with respect to the rationale of specific deterrence and the relationship between the sentence for the current offense and prior time served, "if a defendant served no time or only a few months . . ., a sentence of even three to five years for the current offense might be expected to have the requisite deterrent effect." United States v. Mishoe, 241 F.3d at 220.

### 3. A Guidelines sentence is not necessary to protect the public from future crimes of Mr. Spaulding.

The Court also needs to fashion a sentence that will, if necessary, protect the public. 18 U.S.C. § 3553(a)(2)(C). Mr. Spaulding has no criminal record. The likelihood of Mr. Spaulding committing further crimes is extremely low, if not non-existent. Mr. Spaulding is a

loving 30 year old son, brother and husband. Aside from the transgressions that have brought him before this Court, Mr. Spaulding has had a blemish free criminal record.  It was only Mr. Spaulding's position as a police officer at the East Haven Police Department that put him in a position that resulted in the charges in this case.  Following the conviction, Mr. Spaulding retired from the East Haven Police Department.  In light of this felony conviction, it is a virtual certainty that Mr. Spaulding will not hold a similar position in law enforcement.  Given Mr. Spaulding's family upbringing, education and lack of criminal history, it is extremely unlikely that Mr. Spaulding will engage in future criminal activity and thus the interest in protecting the public from such conduct is non-existent.  For these reasons, the Defendant submits that substantial incarceration, for the purposes of protecting the public from further crimes, is unnecessary. To the contrary, the public could benefit from Mr. Spaulding's service through a sentence containing a component of community outreach.

> **4.  A Guidelines sentence is not necessary to provide Mr. Spaulding with education or vocational training, medical care, or other correctional treatment.**

Mr. Spaulding has wanted to be a police officer for as long as he can remember. Following his graduation from high school, associate's degree in Criminal Justice from Briarwood College in Southington, CT in 2007.  He had already started as a police officer, having been hired by the East Haven Police Department in March of 2005.  Since he began training to become a police officer, Mr. Spaulding has pursued his career and has succeeded at all levels. Again, he has since retired from that position.  As he begins a new chapter in his life, Mr. Spaulding realizes that he must embark on a new chapter – which he knows he will be successful in.  He will continue to be a dedicated family man.  Mr. Spaulding is a young man who has repeatedly shown a willingness to be a give back to his community and be a benefit to society. He intends to continue to make a positive impact and be a productive member of

society in the future. Fortunately, Mr. Spaulding is in good health and has been well educated.

There is no specific medical care or other correctional treatment needs that would be of a

benefit to Mr. Spaulding. He lives an active and healthy life with his family and wife. There

are no additional benefits, either vocationally or medically, that incarceration could offer Mr.

Spaulding.

### iii. 18 U.S.C. § 3553(a)(6): The Need to Avoid Unwanted Sentence Disparities.

One of the principle considerations underlying the enactment of the advisory

sentencing guidelines is "the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Second Circuit has observed that disparity between sentences should be considered on a

national level rather than merely among co-defendants. United States v. Williams, 524 F.3d 209,

215 (2d Cir. 2008).

In numerous recent cases, defendants involved in similar matters have received

sentences that were not consistent with the proffered Guidelines range. For example, on the

trial court level:

> A federal judge in the Southern District of Florida sentenced a police officer
> with the Miami-Dade Police Department to 30 months' imprisonment,
> followed by one year of supervised release, after being convicted at trial of six
> counts of deprivation of civil rights. The evidence at trial revealed that between
> May 27, 2011 and June 26, 2011, Dwivedi, while acting as a police officer with
> the Miami-Dade Police Department, without lawful authority, stopped and/or
> detained numerous individuals and deprived those individuals of their  civil
> rights in violation of 18 U.S.C. § 242.
> http://www.justice.gov/usao/fls/PressReleases/2013/130418-03.html
>
> A corrections officer from the Lexington-Fayette County, Ky., Detention
> Center (FCDC) was sentenced federal court today in Lexington, Ky., for their
> roles in the systematic abuse of detainees at FCDC, the Justice Department
> announced. Federal Judge Karen K. Caldwell sentenced Tyree to serve 18
> months in prison and two years of supervised release .  His co-defendant, a
> former sergeant and supervisor at the same detention center, was sentenced to
> serve 12 months and one day in prison and one year of supervised release.

Both were convicted of conspiring to deprive detainees of their constitutional rights by physically abusing them and by authoring false and misleading incident reports in order to conceal that abuse.
http://www.fbi.gov/louisville/press-releases/2010/lo060210.htm

A former Miami, FL, police sergeant was sentenced in federal court to four years in federal prison after being convicted for stealing drugs from traffickers, planting cocaine on suspects and lying to federal agents. A jury convicted this defendant of two counts of civil rights violations, along with conspiracy to possess and possession with the intent to distribute cocaine and crack cocaine.
http://www.miamiherald.com/2013/03/25/3305735/miami-cop-convicted-in-civil-rights.html

A former Spokane, WA, police officer was sentenced in federal court to 51 months in prison and three years of supervised release for civil rights and obstruction violations stemming from a 2006 beating of an unarmed citizen and an extensive cover-up that followed. Following a Taser deployment and a rapid series of baton blows to the head, neck, and body, the victim, the deceased victim was hogtied, stopped breathing, and was transported to the hospital, where he died two days later. The defendant claimed the beating was justified because he felt threatened by a plastic bottle of soda the deceased victim was holding.
http://www.fbi.gov/seattle/press-releases/2012/spokane-police-officer-sentenced-for-civil-rights-and-obstruction-violations-in-connection-with-in-custody-death-of-otto-zehm

A former Woonsocket, RI, police officer was sentenced in federal court to 12 months and one day in prison followed by two years' supervised release, the first six months to be served in home confinement, for assaulting a juvenile who was in his custody. Douglas had previously pled guilty to a violation of 18 U.S.C. § 242. This officer escorted a juvenile in police custody to a small hallway inside a police station, and thinking he had earlier injured a fellow officer, directed another officer to remove the juvenile's handcuffs, then repeatedly punched and kneed the juvenile, who remained in leg shackles. As a consequence of this beating, the juvenile suffered blunt force trauma and bone fractures in his facial area.
http://www.fbi.gov/boston/press-releases/2010/bs120310.htm

A former Laredo, TX, police officer was sentenced in federal court to 12 months and one day in prison followed by one year of supervised release, for federal civil rights violations. Specifically, while using his authority as a police officer, the defendant struck a male victim multiple times who was handcuffed and detained in the backseat of Carter's patrol car.
http://www.fbi.gov/sanantonio/press-releases/2013/former-laredo-police-officer-ordered-to-federal-prison-for-deprivation-of-civil-rights

A former Memphis, TN, police officer was sentenced in federal court to 18 months in prison and two years' supervised release for federal civil rights violations. The defendant admitted via guilty plea that, after handcuffing Jefferson, he rammed Jefferson's head into the corner of a building, and struck Jefferson in the face several times, causing him to fall to the ground. White also admitted to kicking Jefferson after he fell to the ground.
http://www.fbi.gov/memphis/press-releases/2010/me092910.htm

A former Miami, FL, corrections officer was sentenced in federal court to 12 months in prison and one year of supervised release for a civil rights charge stemming from prisoner abuse that took place at a state prison in Doral, Fla. The defendant was guilty of one count of deprivation of rights under color of law after allegations came to light that corrections officers physically abused inmates by choking, punching, and striking them with wooden broom handles. The officers further forced the inmates to fight one another and then file false reports of the incidents.
http://www.fbi.gov/miami/press-releases/2012/south-florida-corrections-officer-sentenced-on-federal-civil-rights-charge

A former Memphis, TN, police officer was sentenced in federal court to 27 months in prison and one year of supervised release after pleading guilty to stealing money from Hispanic motorists while acting under color of law during traffic stops. During these stops, Moore ordered the victims out of their vehicles, patted them down and removed personal items from them during the search. He then stole money from the victims before returning their personal items and releasing them.
http://www.fbi.gov/memphis/press-releases/2009/me110409.htm

As this selection of cases establish, the recommended guideline range in this case calls for a far more severe sentence than that imposed on other defendants who engaged in similar and often more serious conduct and offenses – though the facts are different than in this case. There is simply a lack of cases in the Second Circuit – other than those already cited – that this Court could use as a point of comparison. Despite the small sample size, in order to avoid unwarranted sentencing disparities, and to ensure a sentence that is sufficient, but not greater than necessary, we respectfully urge the Court to impose a non-Guidelines sentence that consists of a term of probation, home confinement and community service.

## VI.    SENTENCING PROPOSAL

Dennis Spaulding appears for sentencing after having been convicted after jury trial to the following: Count 1: Conspiracy Against Rights, 18 U.S.C. § 1241, Count 5, Deprivation of Rights: Unreasonable Force, 18 U.S.C. § 242; Counts 6, 9: Deprivation of Rights: False Arrest, 18 U.S.C. § 242; and Counts 7, 10: Obstruction of Justice: False Report, 18 U.S.C. § 1519.  Mr. Spaulding requests that this Court sentence him to a non-Guideline which includes a period of home confinement and community service. He asks the Court to consider his life accomplishments, good deeds and family life in fashioning his sentence.  Such a sentence would reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense – especially when compared to similar dispositions.

Mr. Spaulding finally requests that, should a period of incarceration is imposed in this case, the Court grant a request for self-surrender to a facility as close to Connecticut as possible, as it is relatively close to the Defendant's family.

RESPECTFULLY SUBMITTED,
DENNIS SPAULDING

By:    _____
FRANK J. RICCIO II
LAW OFFICES OF FRANK J. RICCIO LLC
923 EAST MAIN STREET
P.O. BOX 491
BRIDGEPORT CT 06601-0491
Fed Bar #CT 20980
(203) 333-6135 (phone)
(203) 333-6190 (fax)
fricciojd@aol.com (email)
www.ricciolaw.com (site)

**<u>CERTIFICATION</u>**

I hereby certify that on January 10, 2014, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. A copy of this has also been electronically delivered to Mark Myers, United States Probation Officer, Office of United States Probation, 141 Church St, 22nd Floor, New Haven, CT at Mark.Myers@ctp.uscourts.gov.

By: _____
       FRANK J. RICCIO II
       LAW OFFICES FRANK J. RICCIO LLC